**Reversed and Rendered and Memorandum Opinion filed July 16, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00249-CV

---

### MARGARET ONWUDIEGWU, Appellant

### V.

### JAIME J. DOMINGUEZ, Appellee

---

**On Appeal from the County Court at Law No. 4 and Probate Court**
**Brazoria County, Texas**
**Trial Court Cause No. CI48482**

---

### M E M O R A N D U M   O P I N I O N

In this appeal from a judgment ordering a property owner to pay a construction worker damages in quantum meruit for work performed in constructing a new home, the property owner argues that the county court at law lacked jurisdiction over the claim and that there is legally insufficient evidence to support the judgment. We conclude that although the trial court had jurisdiction, there is legally insufficient evidence to support the implied finding that the construction worker provided materials and services under circumstances that reasonably notified the appellant that the worker expected to be paid by her. We accordingly reverse the trial court's judgment and render judgment that the construction worker take nothing by his claim.

# I. BACKGROUND

In August 2012, Jaime J. Dominguez filed a suit on a sworn account against defendants Margaret Onwudiegwu and Elias Ogonwanne Onwudiegwu, also referred to in the record as Okoli Elias Onwudiegwu ("Okoli").[1]  Dominguez included claims for breach of an oral contract, quantum meruit, and mechanic's and materialman's liens for work he and his workers performed constructing a new home for the Onwudiegwus.  In her answer, Margaret included a verified plea that Okoli was deceased.

Dominguez then filed a combined suggestion of death and amended petition, suggesting that Okoli died more than two years before this suit was filed.  In the amended pleading, Dominguez named neither Okoli nor a representative of Okoli's estate as a defendant.

After Dominguez dropped Okoli as a defendant, Ugonwanne Onwudiegwu, in his capacity as the administrator of Okoli's estate,[2] filed a plea to the jurisdiction in this case.  Ugonwanne asserted that "this is community property," but it is not clear what "this" is.  Ugonwanne contended that Okoli's estate was a necessary and proper party pursuant to former Texas Probate Code section 298.[3]  He also stated that "the proper jurisdiction to adjudicate the controversy is Cause No. PRO 032366; *In re Estate of Okoli Elias Onwudiegwu, Deceased*; In the County Court [a]t [L]aw No. 4, Sitting in Probate," although this case already was pending in "County Court at Law No. 4 and Probate Court of Brazoria County."  *See* TEX. GOV'T CODE ANN. § 25.0221(4) (West

---

[1] Because we will be discussing three people with the last name Onwudiegwu, we refer to each by his or her first name.

[2] Although Ugonwanne, a lawyer, also appeared in this case as Margaret's attorney, that is not mentioned the plea to the jurisdiction.  The plea instead begins with the unambiguous language, "COMES NOW UGONWANNE ONWUDIEGWU, Administrator of the Estate of Okoli Elias Onwudiegwu, and files his Plea to the Jurisdiction," and is signed by Ugonwanne, "Administrator for Okoli Onwudiegwu."

[3] The Probate Code has since been repealed and replaced with the Estates Code.

2

Supp. 2014) (stating the name of this trial court). The written plea was unsupported by evidence, and no response to it is in the record.

Dominguez moved to consolidate this case with *In the Estate of Okoli Elias Onwudiegwu, Deceased*, in the County Court at Law No. 3 and Probate Court of Brazoria County. This motion also was unsupported by evidence. The trial court denied both motions.[4]

At trial, Dominguez testified that in 2008, he worked for Luis Melendez, a general contractor, who paid him $900 for work he performed on a home under construction in Brazoria County. Dominguez told the home's owner, "Mr. Okoli," that Melendez "was not finishing paying" Dominguez. According to Dominguez, Okoli fired the general contractor and asked Dominguez to finish the brickwork. Dominguez testified that Okoli gave him checks for $2,000, and Dominguez spent $1,291 of that amount for materials. Dominguez finished the bricklaying work, and one of his workers additionally did some flashing work on the house. Dominguez stated that based on his records, he was owed a total of $6,380 for the work that he and his employees performed on the house. He stated that he and Okoli never had a written agreement, and he never spoke with Margaret.

Dominguez's wife testified that she keeps her husband's books and records and that after Dominguez stopped working on this house, Okoli contacted her to say that he wanted Dominguez to finish the job. She testified that she told Okoli "to pay off what he owed, and after he would pay, we would finish the work." She also stated that Okoli said "[h]e would pay once the job was completely done," but that she would not agree to

---

[4] The trial court's orders denying Ugonwanne's plea to the jurisdiction and Dominguez's motion to consolidate indicate that an oral hearing was held on the two motions on the same day, and that the trial court received evidence in connection with the plea to the jurisdiction. This part of the reporter's record was lost, and after we abated the case, the trial court issued written findings that the missing material was not necessary to Margaret's appeal, and thus, there was no need for the parties to agree to replace it.

3

that. According to this witness, Dominguez was owed $6,940 "for work that he did for Elias Okoli Onwudiegwu and his wife Margaret." Dominguez's wife affirmed that she filed an affidavit of mechanic's lien against that property. Records show that the affidavit of lien was recorded on February 17, 2009, and that Margaret was notified of the filing via certified mail three days later.

Margaret moved for directed verdict on the quantum meruit claim, arguing that Dominguez was required to show that "the charges were actually for this property, and the only thing they submitted was invoices without the address of the property to be worked on." After the trial court denied the motion, Margaret testified that her current address is the same as that of the property that is the subject of this dispute, and that she has never had any communication with the Dominguezes. She further testified that she moved to the new home in August 2009, but she was not sure whether she had established it as her homestead.

Dominguez prevailed only on his quantum meruit claim, for which the trial court awarded him $6,380, plus attorney's fees, costs, and interest. In its final judgment, the trial court further stated that Okoli's estate was not a necessary party. Findings of fact and conclusions of law were neither issued nor requested.

In two issues on appeal, Margaret argues that the trial court (a) lacked subject-matter jurisdiction to adjudicate this suit, and (b) erred in overruling her motion for directed verdict on Dominguez's quantum meruit claim.

## II. SUBJECT-MATTER JURISDICTION

Because a trial court has no power to decide a case over which it lacks subject-matter jurisdiction, a challenge to the trial court's subject-matter jurisdiction can be raised for the first time on appeal. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). Such a challenge presents a question of law that we consider de novo. *Id.*

4

## A.    Jurisdiction as a "Statutory Probate Court"

In Margaret's primary jurisdictional argument, she asserts that the court below "is actually two courts presided over by one judge."  According to Margaret, "the trial court sits as the County Court Law No. 4 in Brazoria County, Texas" at some times, and at other times, it "sits as a statutory probate court."[5]  She states that in this case, "the trial court was not sitting as a statutory probate court."[6]  From this, she concludes that the trial court lacked subject-matter jurisdiction, and that "the proper course of action would have been for [Dominguez] to file a claim with the estate's administrator and then file his causes of action in the County Court [a]t Law No. 3 sitting as a statutory probate court."

Margaret's jurisdictional argument appears to hinge on the extent to which the various county courts at law in Brazoria county can, do, or did "sit as a statutory probate court."  Although her reasoning is opaque, one thing is clear:  this argument is based on inaccurate premises.

First, there is no statutory probate court in Brazoria County.  "'Statutory probate court' means a statutory court designated as a statutory probate court under Chapter 25, Government Code."[7]  Under the former Probate Code, "[a] county court at law exercising probate jurisdiction is not a statutory probate court . . . unless the court is designated a statutory probate court under Chapter 25, Government Code."[8]  There are statutory probate courts in ten counties:  Bexar, Collin, Dallas, Denton, El Paso, Galveston, Harris, Hidalgo, Tarrant, and Travis.  *See* TEX. GOV'T CODE ANN. §§ 25.0171(c), 25.0451(b), 25.0591(d), 25.0631(b), 25.0731(b), 25.0861(b), 25.1031(c),

---

[5] Bold and underlining omitted.

[6] Bold and underlining omitted.

[7] Act of Apr. 28, 1997, 75th Leg., R.S., ch. 52, § 1, sec. 3(ii), 1997 TEX. GEN. LAWS 121, 121, *repealed by* Act of May 26, 2009, 81st Leg., ch. 680, § 10(a), 2009 TEX. GEN. LAWS 1512, 1731 (eff. Jan. 1, 2014).

[8] *Id.*

25.1101(b), 25.2221(c), and 25.2291(c) (West 2004 & Supp. 2014). In this case, the word "probate" appears in the trial court's name (as it does in the names of each of Brazoria County's four statutory county courts), but the "County Court at Law No. 4 and Probate Court of Brazoria County" is not a statutory probate court. *Compare id.* § 25.0591(d) ("Dallas County has the following statutory probate courts . . . .") and *id.* § 25.1031(c) ("Harris County has the following statutory probate courts . . . .") *with id.* § 25.0221(4) (stating that "Brazoria County has the following statutory *county* courts" and listing the trial court in this case) (emphasis added).

Second, of Brazoria County's four statutory county courts, none "sits as a statutory probate court," but all exercise "original probate jurisdiction." *See* Act of June 1, 2009, 81st Leg., R.S., ch. 1351, § 12(b), sec. 4C, 2009 TEX. GEN. LAWS 4273, 4276 (providing that where, as here, a county has no statutory probate court, its county courts at law exercise original probate jurisdiction). That is not the same jurisdiction as a statutory probate court. *See* TEX. GOV'T CODE ANN. § 25.0003(f) (West Supp. 2014) ("A statutory county court does not have the jurisdiction of a statutory probate court granted statutory probate courts by the Texas Probate Code.").

Third, Margaret assumes that Dominguez's claims against her could be litigated only in a statutory probate court, or perhaps in a court exercising probate jurisdiction. She contends that the trial court did not have "jurisdiction to enter a money judgment" and that it lacked jurisdiction due to the absence of a necessary party. Because it is not clear whether these contentions are part of Margaret's first jurisdictional argument or are distinct grounds for concluding that the trial court lacked jurisdiction, we have addressed each of them separately.

## B.    "Jurisdiction to Enter a Money Judgment"

Margaret asserts that under sections 298[9] and 314[10] of the former Texas Probate

---

[9] *See* Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 5, sec. 298, 1995 TEX. GEN. LAWS

6

Code, the trial court did not have subject-matter jurisdiction to enter a money judgment in this case. Those provisions, however, concern claims against a decedent's estate through the estate's personal representative, and no such claims were litigated in this case.

The record instead shows that after Margaret filed her original answer asserting that Okoli was deceased, Dominguez filed a "Suggestion of Death and First Amended Original Petition for Suit on a Sworn Account." In the amended petition, Dominguez neither named Okoli as defendant nor substituted the administrator of Okoli's estate. Dominguez thereby dismissed the claims against Okoli. *See Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972) (explaining that an amended pleading acts as a voluntary dismissal of an omitted defendant); *Phifer v. Nacogdoches Cnty. Cent. Appraisal Dist.*, 45 S.W.3d 159, 172 (Tex. App.—Tyler 2000, pet. denied) (holding that an amended petition omitting a deceased defendant acted as a voluntary dismissal, so that the rules regarding a writ of scire facias to substitute an estate's representative for a deceased defendant became inapplicable). And, because Dominguez also did not name the estate's administrator as a defendant in the amended petition, the only claims actually litigated were Dominguez's claims against Margaret. The cited provisions of the former Probate Code therefore do not apply.

## C.    Absence of a Necessary and Proper Party

In the section of her appellate brief in which Margaret challenges the trial court's subject-matter jurisdiction, she also states, "It is the contention of the Defendant that the estate is a necessary and proper party." She does not explain why she contends that the estate is a necessary and proper party, and in any event, an estate is "not a legal entity

5207, 5209, *repealed by* Act of May 26, 2009, 81st Leg., ch. 680, § 10(a), 2009 TEX. GEN. LAWS 1512, 1731 (eff. Jan. 1, 2014).

[10] *See* Act of May 27, 1995, 74th Leg., R.S., ch. 1054, § 16, sec. 314, 1995 TEX. GEN. LAWS 5207, 5212, *repealed by* Act of May 26, 2009, 81st Leg., ch. 680, § 10(a), 2009 TEX. GEN. LAWS 1512, 1731 (eff. Jan. 1, 2014).

and cannot be sued as such." *Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex. 1987).

Even if we treated this isolated statement as an assertion that the estate's personal representative was a necessary and proper party, the problem remains that Margaret raised no such complaint in the trial court. *Cf.* Tex. R. Civ. P. 37 ("Before a case is called for trial, additional parties necessary or proper parties to the suit, may be brought in, *either by the plaintiff or the defendant*, upon such terms as the court may prescribe . . . .") (emphasis added). The record instead shows that the case was called for trial on November 4, 2013, and attorneys for both parties announced that they were ready. At no time did Margaret argue in the trial court that a necessary party was absent from the case. *See Puryear v. Red River Auth. of Tex.*, 383 S.W.2d 818, 821 (Tex. Civ. App.—Amarillo 1964, writ ref'd n.r.e.) (holding that the appellant's complaint that the trial court lacked jurisdiction due to the absence of necessary parties was untimely where raised for the first time in a motion for new trial).[11]

At one time, it was at least theoretically possible that the joinder of a person could be so essential to a case that proceeding in the person's absence would constitute fundamental error, which could be raised for the first time on appeal. *See Vondy v. Comm'r's Court*, 620 S.W.2d 104, 106 (Tex. 1981); *but see Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex. 2004) (stating that since Texas Rule of Civil Procedure 39 has been amended, "[t]he doctrine of fundamental error should no longer protect

---

[11] After Dominguez dismissed his claims against Okoli, the administrator of Okoli's estate—a non-party—filed a plea to the jurisdiction. Although the plea was unsupported by any evidence, the administrator asserted that the estate was a necessary and proper party under section 298 of the former Probate Code. But as previously mentioned, that section concerns presentment of claims against a decedent or the decedent's estate through the estate's personal representative. When the jurisdictional plea was filed, the only claims remaining were Dominguez's claims against Margaret. The administrator of Okoli's estate did not seek to intervene in this suit, but instead asserted that the trial court was required to dismiss the case on the ground that the estate administration was pending in County Court at Law No. 4. County Court at Law No. 4, however, is the same court in which Dominguez's claims already were pending and which ultimately tried the case.

persons from the binding force of judgments when they have had an opportunity to raise the absence of the nonjoined person and waived it" (quoting William V. Dorsaneo, III, *Compulsory Joinder of Parties in Texas*, 14 HOUS. L. REV. 345, 369 (1977))). Assuming, without deciding, that it is still possible for nonjoinder to constitute fundamental error, Margaret cites no authority that supports her implication that this is such a case, and we have not independently discovered any such authority. The record shows that Margaret had ample opportunity to raise this issue in the trial court, and we conclude that Margaret's failure either to raise this issue before trial or to brief the question of why she was not required to do so defeats her appellate complaint. *See, e.g.*, *Vondy*, 620 S.W.2d at 108 (reversing the appellate court's holding that the failure to name one of the four commissioners as a party was fundamental error and explaining that the existing defendants had failed to point out any defect in the petition related to the omission of the fourth commissioner); *Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.2d 200, 204 (Tex. 1974) (explaining that Texas Rule of Civil Procedure 39 concerning "Parties Needed for Just Adjudication" was based on Federal Rule of Civil Procedure 19, and that under that rule, "[o]ne of the practical factors" considered by the U.S. Supreme Court "in holding that an absent party was not jurisdictionally indispensable was the fact that the case had actually been tried as to those parties who were present and there was no objection at the trial level concerning the nonjoinder of a party." (citing *Provident Tradesmens Bank & Trust v. Patterson*, 390 U.S. 102, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968))). *Cf. Gilmer Indep. Sch. Dist. v. Dorfman*, 156 S.W.3d 586, 587 (Tex. App.—Tyler 2003, no pet.) (addressing the merits of the complaint where—unlike here—the existing defendant filed a pretrial plea to the jurisdiction in which it raised the issue of failure to join an indispensable party).

Having rejected each of Margaret's jurisdictional arguments, we overrule her first issue.

### III. QUANTUM MERUIT

In her second issue, Margaret contends that the trial court erred in overruling her motion for directed verdict on Dominguez's quantum meruit claim. Because a defendant in a nonjury trial makes a motion for judgment rather than a motion for directed verdict, we construe this as a motion for judgment. *See Hammer v. Wood*, No. 14-07-01081-CV, 2009 WL 2589432, at *1 n.2 (Tex. App.—Houston [14th Dist.] Aug. 25, 2009, no pet.) (mem. op.) (citing *Joplin v. Borusheski*, 244 S.W.3d 607, 610 (Tex. App.—Dallas 2008, no pet.)). The trial court's ruling on a motion for judgment at the close of the plaintiff's case may address both factual and legal issues. *See Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303–05 (Tex. 1988); *Huang v. Don McGill Toyota, Inc.*, 209 S.W.3d 674, 677 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (op. on reh'g). Although Margaret does not expressly challenge the legal or factual sufficiency of the evidence supporting any of the trial court's implied findings, she does ask that this court reverse the trial court's judgment and render a take-nothing judgment on Dominguez's quantum meruit claim. Because she would be entitled to that result only if the evidence were legally insufficient to support the judgment, we will construe this issue as a challenge to the legal sufficiency of the evidence. *See Stevens v. Travelers Ins. Co.*, 563 S.W.2d 223, 233 (Tex. 1978) (explaining that a successful challenge to the legal sufficiency of the evidence requires rendition of judgment). *Compare Magana v. Citibank, N.A.*, 454 S.W.3d 667, 681 n.11 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (examining the appellants' prayer for relief and concluding that they challenged the factual sufficiency of the evidence because they sought remand, which is the appropriate remedy when the evidence is factually insufficient) *with Whitmire v. Greenridge Place Apartments*, No. 01-06-00963-CV, 2007 WL 2894167, at *3 (Tex. App.—Houston [1st Dist.] Oct. 4, 2007, pet. dism'd) (mem. op.) (construing a challenge to the denial of a "motion for directed verdict" in a bench trial as a challenge to the legal sufficiency of the evidence).

When a complete reporter's record is filed, we review the trial court's findings of fact for legal and factual sufficiency under the same standards we apply to jury verdicts. *Green v. Alford*, 274 S.W.3d 5, 23 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (op. on reh'g en banc) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam)).[12] To analyze the legal sufficiency of the evidence, we review the record in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). We will conclude that the evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

Quantum meruit is an equitable remedy that generally is available if there is no express contract covering the services or materials furnished, but nonpayment would unjustly enrich the party benefited by the work. *See Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). To prevail under this theory, the claimant must prove that (a) the claimant provided valuable services or materials, (b) the services or material were provided to or for the person that the claimant seeks to charge, (c) the person that the claimant seeks to charge accepted the services or materials, and (d) the circumstances reasonably notified the person whom the claimant

---

[12] Because parts of the reporter's record are missing, we abated the case for the trial court to conduct a hearing to determine if the missing parts of the record were necessary to Margaret's appeal. *See* TEX. R. APP. P. 34.6(f). Because the trial court determined that the missing parts of the record are not necessary, we treat the reporter's record before us as complete.

seeks to charge that the claimant was expecting to be paid by that person. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citing *Vortt Exploration*, 787 S.W.2d at 944). Because Dominguez prevailed on this claim, the trial court must have found that Dominguez proved each of these elements.

On appeal Margaret makes two arguments directed to the quantum meruit claim. Her first argument is based on the premise that Dominguez's work was covered by an express contract with the general contractor. *But see Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995) (per curiam) (explaining that construction contracts are an exception to the general rule that a party may not recover under quantum meruit when there is an express contract covering the services or materials furnished). According to Margaret, "[t]he evidence before the trial court was that the Plaintiff was a subcontractor of the general contractor, and that it was the responsibility of the general contractor to pay for the labor and materials used by his subcontractors." This characterization of the record is inaccurate. Dominguez offered uncontroverted testimony that Okoli fired the general contractor, and then negotiated for Dominguez to work directly for Okoli. There is no evidence that the work at issue in this case was covered by an express contract between Dominguez and the general contractor. In connection with this argument, Margaret also states that "[t]here is no written evidence in this appellate record" that she fired the general contractor and hired Dominguez, but she cites no authority that such documentary evidence is required. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant to support the arguments in its brief "with appropriate citations to authorities and to the record").

Her remaining argument consists of the single sentence, "The evidence further shows that [Margaret] never interacted, written, verbal or otherwise, with [Dominguez]." At a minimum, that argument goes to fourth element of a quantum meruit claim, that is, whether the circumstances reasonably notified Margaret that Dominguez was expecting to be paid by her.

After reviewing all of the evidence in the light most favorable to the judgment, we conclude that the evidence is legally insufficient to support this implied finding. The evidence establishes that the work for which Dominguez seeks payment was performed in September and October 2008. He worked on the construction of a new house; Margaret and Okoli lived elsewhere at that time. The Dominguezes spoke only to Okoli. Okoli signed a check in partial payment to Dominguez, but the check was drawn on the account of "Tisiel International." There is no other evidence about "Tisiel International." There also is no evidence that Margaret had reason to know that Okoli had fired the general contractor. It is undisputed, however, that Dominguez and Margaret never met or spoke before this case. On this record, there is no evidence that circumstances reasonably notified Margaret that Dominguez expected to be paid by her rather than by the general contractor or by "Tisiel International." *Cf. Gibson v. Bostick Roofing & Sheet Metal Co.*, 148 S.W.3d 482, 490 (Tex. App.—El Paso 2004, no pet.) (reversing a contractor's quantum meruit claim against a property's legal owner on legal-insufficiency grounds where the contractor dealt only with the property's equitable owner, and never dealt with the legal owner).

## IV. CONCLUSION

We conclude that the trial court had subject-matter jurisdiction to adjudicate Dominguez's claims against Margaret, but the evidence is legally insufficient to support one of the implied findings necessary for Dominguez to prevail on his quantum meruit claim. We accordingly reverse the trial court's judgment and render judgment that Dominguez take nothing by his claim.


/s/    Tracy Christopher
        Justice

Panel consists of Justices Christopher, Brown, and Wise.

13